1. The order of the district court made pursuant to
section 1923, Code 1915 (section 47 of the Drainage Act)
by virtue of section 1924, remains under the control of the
district court, and may be revised, modified, or changed
on petition of the commissioners and upon notice. The fact
that the order approving the proposed assessments and the
findings was made upon a stipulation entered into between
the remonstrants and commissioners does not change the
nature of the order, and the court had power to set aside
the decree entered upon such stipulation and to enter a new
decree after notice and upon hearing.            P. 506

2. The notice required by section 66 of the Drainage
Act (section 1942, Code 1915) as to the letting of contracts
for the construction of the drainage system need not be
published for four weeks. The statute fixing no time dur-
ing which the notice shall be published, a notice published
for a reasonable length of time is sufficient.            ·P. 507

Appeal from District Court, Chaves County; Mc-
Clure, Judge.

Suit for injunction by J. R. Stanley and others
against B. H. Wixon and others, commissioners of the
Dexter-Greenfield Drainage District, and Walter S.
Dickey. Judgment for defendants, and plaintiffs appeal. Affirmed.

GIBBANY & EPSTEIN, of Roswell, for appellants.

REID & HERVEY, of Roswell, for appellees.

### OPINION OF THE COURT.

ROBERTS, J. The Dexter-Greenfield drainage district was organized in Chaves county under article 1, c.
31, Code 1915. Commissioners were appointed by the
district court of Chaves county, as provided in such act,
who proceeded to discharge the duties imposed upon
them as such commissioners. On July 9, 1914, said commissioners filed their original report upon assessments
for benefits, damages, and costs of construction, which
said report, among other matters and things therein contained, estimated the cost of construction of the proposed drainage in such district in the sum of $375,000.
Notice was given as required by the act referred to, and
a large number of landowners remonstrated against the
confirmation and approval of such report. The remonstrance alleged that the assessment as made and reported by the commissioners was excessive and confiscatory. The matter of the remonstrance came on for
hearing, and after a part of the testimony was taken,
the attorneys for the remonstrants and the attorneys
for the commissioners entered into a written stipulation,
whereby it was agreed by and between the parties that
the report of the commissioners filed in such cause
should be approved by the court with certain modifications and provisions, which were set forth in said stipulation, and which were, in part, as follows:

"That instead of the court authorizing an assessment
of $375,000 for the construction of the drainage system
in this district as reported by the commissioners, the court

at this time authorize an assessment of $325,000, and that in the sale of bonds to provide funds for the cost of construction, damages for right of way, etc., as provided by law, the commissioners make absolute sale of bonds to the extent of $250,000, and that the remainder of said amount, to wit, $75,000, be withheld until near the completion of said construction work as hereinafter provided but this paragraph does not prejudice the right of the commissioners under the law to ask for such additional assessment as may be found after report before the completion of the work to be necessary, and that the said commissioners make the best arrangement possible in regard to the delivery of the funds upon the sale of said bonds in installments, as needed for construction work so as to save the accumulation of interest upon unused money."

"[The second paragraph provided for the order in which the work should be carried out, for proceedings in settlement of disputes, etc.]

"That at any time during the construction of said work if the proceeds from the sale of said $250,000 bond issue become exhausted and it becomes necessary to complete the work according to the commissioners' plans, as herein modified, then they may issue additional bonds to the extent of the remaining $75,000, upon the order of the court, or of so much thereof as may be necessary to complete and pay for the entire work."

This stipulation was entered into on the 29th day of October, 1914. Upon said stipulation the court entered an order approving the report of the commissioners as modified by such stipulation. The estimates were limited to $325,000. The order further provided that the terms of the stipulation relative to the order of the work and the amount of the bond issue should be provided for in the final order of the court upon assessments for benefits, damages, and costs of construction. On June 1, 2, 3, and 4, 1915, there was inserted in the Roswell Daily Record and in the Roswell Evening News an advertisement, entitled "Notice to Contractors—Dexter-Greenfield Drainage District," giving notice of receipt of sealed proposals for the construction work of said drainage system. On June 5, 1915, the said commissioners met at the office of the engineer for the district, in Roswell, N. M., for the purpose of receiving, opening, and considering proposals received for the construction work so advertised for as aforesaid. On such date the

said commissioners opened and considered the only bid which was received by them, being the bid of Walter S. Dickey. On the same date, June 5, 1915, said commissioners replied to the proposals of Walter S. Dickey, accepting the same with certain changes and modifications therein set out, which said changes and modifications were thereafter, on the same date, accepted. On July 26, 1915, there was entered into by and between Walter S. Dickey and the commissioners of the said Dexter-Greenfield drainage district a written contract for the construction of said drainage system. On August 12, 1915, it was discovered that the amended report of the commissioners, as filed by them and approved and confirmed by the court, did not contain the amounts of benefits assessed, and, upon the motion of the commissioners, the court ordered the withdrawal of said report and amended assessment sheets in order that the commissioners might insert such assessments for benefits therein, and on the same day, upon motion of the commissioners, set aside in toto the decree of the court theretofore entered, to-wit, on December 24, 1914. On August 13, 1915, the said commissioners refiled their assessment sheets, after having inserted thereon assessment of benefits as provided in the order of the court allowing their withdrawal, and also filed a supplemental report upon assessments for benefits, damages, and cost of construction. The court thereupon entered its order fixing September 15, 1915, at the courthouse in Roswell, N. M., in the main courtroom thereof, at 10 o'clock a. m., as the time and place when and where said report would come on for hearing, and at which time all persons might appear and remonstrate against the confirmation thereof. Notice of such setting was duly given; the matter came on for hearing as noticed; certain amendments were made to said report in open court, and at which time (as shown by the order of the court made September 15, 1915, but which was filed December 24, 1915) evidence was heard on the matter of the necessity of authorizing the commissioners to issue im-

mediately $325,000 of the bonds of said district. Notice under the order of the court was served upon each landowner in the district, and which proceeding was had after the stipulation described in the complaint had been entered, and after the decree of the court confirming the same had been set aside upon motion of the commissioners. This notice was, in part, as follows:

"Upon the 12th day of August, 1915, upon motion of the commissioners, the court entered an order giving them leave to withdraw the amended assessment sheets herein and insert such benefits. * * * And upon further motion the court entered an order August 12, 1915, vacating and setting aside the order of the court confirming the report of the commissioners entered December 24, 1914. * * * That on August 13, 1915, said commissioners filed their supplemental report herein upon assessments for cost of construction, for damages and benefits."

At the conclusion of the said notice, after the list of landowners and the description of their lands, and after stating that the full amount of the assessments as finally reported by the commissioners is $325,000, and that the commissioners recommended that the same be raised by assessments upon the land, among other things, appears the following:

"And that to raise the above-mentioned amount immediately for the construction of said system that the commissioners be empowered to and do issue its negotiable coupon bonds. * * *"

In the final order of the court, entered December 15, 1915, which is the order upon which the bond issue was based and was the authority for the sale of the bonds, appears the following relative to the amount of the issue, which order was entered at the conclusion of the hearing had pursuant to the notice above mentioned:

"That since the said stipulation was entered [referring to the stipulation heretofore mentioned] the commissioners have ascertained that it will be impossible to complete said work for the sum of $250,000; that after due and proper legal advertisement the commissioners have received bids

for said construction work, and the lowest bid offered was approximately $325,000 and the said work is now in course of construction under said bid; that the commissioners have an offer upon the entire issue of $325,000 at 90 cents on the dollar, but that it will be impracticable to split the said issue and the said offer does not include or contemplate the splitting thereof; * * * that the time and expense incident to securing new purchasers for said issue of $75,000 would more than equal any loss which the district might sustain in the way of interest accumulating thereof if sold at the present time."

In the said order or decree of the court, after the above findings, it is ordered:

"That the said Dexter-Greenfield drainage district, by and through its said commissioners, be and it is hereby empowered and authorized to issue the negotiable coupon bonds of said drainage district in the sum of $303,500."

—and proceeds to describe the denomination, rate of interest, date, etc., of the said bonds. On December 20, 1915, there was filed in the district court of Chaves county, by appellants in this appeal, a first amended complaint, which complaint alleged, in substance, that the commissioners of the Dexter-Greenfield drainage district, the engineer of said district, and the other defendants therein named had entered into a conspiracy, the object of which was to so proceed in the matter of the sale of the bonds of said district, and the matter of letting the contract for the construction work of said drainage system, as that there would be no competition to the bids of the said Walter S. Dickey. The objects of the suit were primarily to enjoin the delivery of the bonds of said district, to enjoin the said Walter S. Dickey from carrying out his contract for the construction of said drainage system, and to have the court set aside its order of September 17, 1915, whereby the commissioners were authorized to dispose of the entire assessment provided in said stipulation, viz. $325,000, in one sale of bonds. On December 22, 1915, the appellees duly answered to the complaint. On February 5, 1916, there was filed appellant's reply to appellees' an-

swer. On January 26, 1916, the commissioners filed a report on the sale of bonds, stating that they had made sale of the entire issue of $303,500 of the bonds of the district to Walter S. Dickey at 90 cents on the dollar, and asking the court to approve said sale and to fix a time and place for hearing upon their said motion; and thereupon the court entered its order, setting said report for hearing for January 29, 1916, at 10 o'clock a. m. in the main courtroom at the courthouse in Roswell, and also providing in said order that a copy of the report of the commissioners, together with a copy of the order of the court for hearing thereon, be served upon Ed. S. Gibbany, the attorney for H. Swett and others, remonstrants, who were the parties to the stipulation described in the complaint, and also upon the guardian ad litem theretofore appointed by the court to represent certain minors and insane persons. On February 5, 1916, after hearing pursuant to said notice, the court entered its order approving and confirming the sale of "Series A" bonds, being the entire issue of $303,500 to Walter S. Dickey at 90 cents on the dollar. This case came on for hearing before the court without a jury on August 21, 1916. After a complete hearing, as disclosed by the transcript in this case, the court, on September 22, 1916, made findings and conclusions, finding all the controverted issues in favor of the appellees, generally, and finding specifically on other issues which, as stated therein, the court deemed sufficient to entirely dispose of the case. From this judgment appellants appeal.

The purpose of the present proceeding was to enjoin the commissioners of the drainage district and certain others from proceeding with the sale of the bonds and the carrying out of a contract made for the construction of the drainage system. It was alleged by appellants in their complaint in the court below that a conspiracy existed between one Dickey, the contractor, and the commissioners, by which they were to dispose of the bonds at less than their value, and to do other objectionable acts contrary to law. There was, however, no

sufficient evidence produced tending to show that such conspiracy in fact existed, and the court properly found against the appellants upon this proposition.

Eliminating this phase of the case from further consideration, there remains in reality but two questions requiring consideration. The first is as to the effect of the interlocutory order made by the district court, under the stipulation entered into between the attorneys for the commissioners and the attorneys for the remonstrants. This interlocutory decree specified the amount of bonds that were to be issued and the manner and time of issuance. The court later, without notice, set aside this order, and after notice to all the parties heard the petition of the commissioners for an order to issue and sell the total authorized bonds at one time. None of the remonstrants appeared at this hearing, and the order, as prayed for by the commissioners, was made and entered.

[1] Appellants contended in the court below, and argue here, that the original order entered upon the stipulation of the parties was binding upon all the parties, and that the court was without power to alter or amend it, except upon the grounds of fraud or mistake, and then only after notice to the parties interested. They rely as support for their contention upon the case of Stites v. McGee, 37 Or. 574, 61 Pac. 1129. That case, however, is not authority upon the proposition involved in the present case. In the Oregon case the consent or stipulated decree was final, and necessarily the court would have no power to set aside, alter, or amend it, except upon the recognized grounds of fraud or mistake. Here, however, the order vacated by the court was an interlocutory order. We quote sections 1913, 1923, 1924, and 1954, Code 1915, which show clearly the nature of the first order entered by the court herein.

"Sec. 1913. The commissioners appointed as aforesaid and their successors in office shall from the entry of such order of confirmation, constitute the corporate authority of said drainage district, and shall exercise the functions

conferred on them by law, and do all things and perform all acts necessary to the construction and preservation of the proposed' work."

"Sec. 1923. If there be no remonstrance, or if the finding be in favor of the validity of the proceedings, or after the report shall have been modified to conform to the findings, the court shall' confirm the report and order of confirmation shall be final and conclusive, the proposed work shall be established and authorized and the proposed' assessments approved and confirmed, which approval and confirmation shall be final, unless within thirty days an appeal be taken to the Supreme Court.

"Sec. 1924. Said order of confirmation may, at the same or at any subsequent term of said court, be revised, modified' or changed, in whole or in part, on petition of the commissioners, after such notice as the court may require, to parties adversely interested."

"Sec. 1954. Commissioners of drainage districts are hereby declared to be public officers. The presumption shall be in favor of the regularity and validity of all their official acts. Whenever any report of the commissioners of any drainage district or any part of said report is contested, remonstrated against or called' in question, the burden of proof shall rest upon the contestant, remonstrant or questioner."

The order being interlocutory and within the control of the court, its interlocutory nature could not be destroyed, changed, or impaired by virtue of the fact that it was entered upon agreement or stipulation of the parties. No new order was made to take its place until after notice to the parties and an opportunity to be heard. The statute contemplates that the court shall at all times be free, upon proper showing, to make such further and necessary orders as may be essential to the completion of the object contemplated. The hands of the court cannot be tied by a stipulated interlocutory decree. We see no impropriety in the action of the court in setting aside the original interlocutory order and requiring the parties to show cause why an amended order should not be made as the necessities of the district required.

[2] The only other question seriously argued by appellants is that the notice appearing for four consecutive days in the local newspaper at Roswell as to the receiving of bids for the construction of the drainage

system was, as a matter of law, an insufficient notice. Section 66 of the drainage act (section 1942, Code 1915) which requires publication, is silent as to the time such publication shall run. It requires publication only in a newspaper published in the county in which the petition is filed. All the testimony in the record in this respect shows is that the notice given herein was a reasonable, public notice, and the court so found.

It also appears that the commissioners did not content themselves with the publication required by law, but sent letters and telegrams to contractors and parties whom they thought might be interested in Colorado, Kansas City, and other places, endeavoring to secure bids upon the work. In Dillon on Municipal Corp. (4th Ed.) § 809, the author says, in speaking of contracts let by city councils upon advertisement:

"When the statute does not prescribe the time nor the method of advertisement, these matters are left to the discretion of the city council or of the board intrusted with the duty of making the contract."

The statute here, as stated, specifies no time during which the advertisement must run, and, applying the reasoning advanced by Judge Dillon, it would seem that, inasmuch as the authority to let the contract was vested in the commissioners with the restriction that they must advertise for sealed bids, without stating the length of time, then the same general authority which gives a city council the right to determine what is a reasonable time should give to the commissioners the same right to determine what is a reasonable length of time, and their determination as shown by their acts and conduct makes it a prima facie case that their acts are reasonable and just.

It is not charged in the petition here that the notice given was not reasonable. The contention simply is that it should have been four weeks instead of the time which it ran. There is no charge or evidence tending to show fraud or improper conduct on the part of the

commissioners. We do not believe the statute requires the notice of the letting of the contract and asking for bids for the construction of the work to run four weeks, but that it merely requires a reasonable notice.

Finding no error in the record, the judgment of the trial court will be affirmed; and it is so ordered.

HANNA, C. J., and PARKER, J., concur: